Edward BROADUS, Jr., and James H. Dunville, Appellants (Defendants below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 784S304.

Supreme Court of Indiana.

Jan. 20, 1986.

Thomas A. Murto, Murto & Holbrook, Goshen, for appellants.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendants-Appellants Edward Broadus, Jr., and James H. Dunville were jointly tried by a jury in the Elkhart Circuit Court. Each was convicted of robbery while armed with a deadly weapon and sentenced to serve a term of twenty (20) years. Appellants now raise the following twelve (12) issues:

1. admission of testimony tainted by unduly suggestive identification procedures;

2. admission of evidence tainted by an illegal search;

3. exclusion of black jurors from the jury panel;

4. allowing a hearing impaired juror to serve on the jury;

5. denial of a motion for severance;

6. use of an "Allen charge" instruction;

7. denial of Dunville's motion to represent himself;

8. ineffective assistance of counsel;

9. the shackling of Dunville within jury view;

10. admission of certain photographs;

11. improper sentencing procedure; and

12. sufficiency of the evidence.

On November 28, 1983, two black males entered the Villa Pizzeria in Goshen, Indiana at approximately 10:30 p.m. The shorter male pointed a small silver pistol at Diana Neal, who called for her husband, Marty Neal. The assailants took cash and rolled coins from the cash register. After an unsuccessful attempt to enter a broken safe, the robbers fled. The Neals immediately reported the robbery to the police, whereupon a Goshen police dispatcher notified neighboring police departments of the robbery. One of the robbers was described by Marty Neal as approximately five feet, ten inches, weighing one-hundred and fifty (150) pounds, ranging from thirty (30) to thirty-five (35) years old, and wearing a dark stocking cap, dark windbreaker, and dark pants. The other assailant was described as taller, more slenderly built and also attired in dark clothing, including blue jeans. More specifically, he was a black male, approximately six feet, two inches, ranging from twenty-five (25) to thirty (30) years old and wearing his hair in an "afro."

A Ligonier police officer posted a lookout at a major intersection about twenty-one (21) minutes east of Goshen. The officer arrived at his assigned post forty (40) minutes after the robbery. He spotted a car with two black males in a convenience store. Parked in a neighboring gas station, the officer observed that the one black male was dressed in a beige suit and wearing a white dress hat. The other black male exited the restroom wearing red trousers but carrying a pair of dark blue jeans. When the officer notified his dispatcher of this information, a roadblock was arranged. The officer followed the suspects, Appellants, to the roadblock and ordered them to exit the car for a "pat-down". Appellants were told a robbery had occurred and that they fit the general description of the robbers. The Ligonier officer asked if he could search the car and Appellants consented. The officer then shined his flashlight inside the car and detected a black cap. Inside the car he found rolled coins, about three hundred ($300.00) dollars in cash, a small chrome revolver under the front seat, and dark clothing. Appellants were then arrested and given their *Miranda* warnings. Later, the victims identified the suspects as the perpetrators of the crime.

I

■ Appellants Broadus and Dunville claim the admissibility of the in-court identification of them by the victims was tainted by unduly suggestive identification procedures. Marty Neal described the robbers, immediately after the crime, in relative height to one another, indicating the

shorter one had a beard. A photograph taken of Appellants was published in the Goshen newspaper after the robbery but before an identification line-up. Marty Neal testified that upon viewing Appellants' pictures in the newspaper, he immediately recognized them and realized he had erroneously reported to the police that the shorter male had the beard. Mr. Neal also testified he had not read any of the article accompanying the pictures, nor seen the article's heading. Appellants claim Marty Neal's change in description, to conform more closely with their characteristics after Neal viewed the photographs, suggests an unduly biased and impermissive identification procedure. Appellants concede that the police did not publish the pictures, but claim they reaped the benefits of having them published. Therefore, the pictures should be considered part of the police identification procedures. However, we have held that any suggestion implanted in the witness' mind by seeing a suspect's photograph in the newspaper should go to the weight, and not the admissibility, of the in-court identification. *Gaddis v. State* (1977), 267 Ind. 100, 368 N.E.2d 244; *Norris v. State* (1976), 265 Ind. 508, 356 N.E.2d 204. Accordingly, the in-court identification of Appellant was proper.

## II

Appellants claim it was error to admit the items seized in the search of the car and their persons. They claim no probable cause existed to stop the car, nor any reasonable suspicion to detain either of them. They further claim they did not consent to a search of their car. Consequently, the incriminating items were seized illegally and should have been suppressed.

Police officers may make an initial or investigatory stop of a person or automobile, under circumstances where probable cause for arrest is lacking when the facts known to the officer at the time of the stop are such as to warrant a man of reasonable caution that an investigation is appropriate. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Taylor v.*

*State* (1980), 273 Ind. 558, 406 N.E.2d 247. In the present case Ligonier police received a description of the fleeing robbers, portraying two black males in dark clothing, including jeans, and one wearing a beard. Shortly thereafter two black males, one bearded, were observed in a convenience store. Although they were not wearing dark clothing at the time, one was viewed exiting the restroom, carrying a pair of blue jeans. These observations gave rise to a reasonable suspicion that Appellants were the suspects. The stop and "patdown" were thus properly conducted. It also is clear from the facts that Appellants voluntarily consented to a search of their automobile. Appellants allege that due to the roadblock procedures used, which entailed policemen with arms drawn, they were coerced into giving consent. However, in *Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201, the United States Supreme Court held that searches of passenger compartments of automobiles, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses reasonable belief that the suspect is dangerous and may gain immediate control of weapons. In this case the police knew the robbers were armed. Further, Appellants had fit the description of the suspects and thereby gave the police cause to suspect a weapon was hidden in the car. Thus, the search was legal with or without consent, and, as suspected, a handgun, under the front seat of the car, was discovered in addition to other incriminating evidence. Once the officers found the handgun, a dark cap, blue jeans and other dark clothing, rolled coins, and approximately three-hundred ($300.00) dollars in cash, the police had probable cause to arrest Appellants for the robbery. The police did so and as they were handcuffing Appellants, they read Appellants their *Miranda* warnings. There were no illegal steps taken in this sequence of events. Therefore all of the evidence admitted at trial and seized in this search was properly admitted.

**1302**

### III

■ Next Appellant Broadus alleges the trial court erred by failing to discharge the entire jury because it was not comprised of any blacks. Appellant grounds this allegation in the fact that the jury venire was exclusively comprised of Caucasians, thereby resulting in a racially biased jury. The United States Supreme Court held in *Taylor v. Louisiana* (1975), 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690, that the Sixth Amendment right to a jury trial requires the selection of a petit jury be from a representative cross-section of the community. *See also Mays v. State* (1984), Ind., 469 N.E.2d 1161. The issue stated in *Taylor* was whether the presence of a fair cross-section of the community on venires, panels or lists from which petit juries are drawn is essential to the fulfillment of the Sixth Amendment's guarantee of an impartial jury trial in criminal prosecutions. Appellant has not shown that the venire in this case consisted of a non-representative group of the community or that there was a systematic exclusion of any particular group. *Burr v. State* (1980), 273 Ind. 280, 403 N.E.2d 343. Accordingly, Appellant has failed to demonstrate error on this issue.

### IV

■ Appellant Dunville next alleges the trial court committed reversible error when he failed to excuse for cause a juror whose hearing was impaired. A trial court has broad discretion in controlling *voir dire. Bieghler v. State* (1985), Ind., 481 N.E.2d 78, *reh. denied; Grimes v. State* (1983), Ind., 450 N.E.2d 512. The record reveals that upon being questioned during *voir dire* the hearing impaired juror indicated he had no hearing difficulty when sitting in the jury box. He had experienced difficulty only when sitting further away from the bench. Consequently, the trial court had good reason to allow this juror to remain. Further, Appellant has not in any way demonstrated that this particular juror in fact experienced any hearing difficulty during

the trial. Thus, Appellant has failed to demonstrate any prejudice or error.

### V

■ Appellant Broadus next contends it was error to deny his motion for severance because his co-defendant's acts were so prejudicial as to deny him a fair trial. The decision to grant a motion for severance is within the trial court's discretion. *Brewer v. State* (1983), Ind., 449 N.E.2d 1091. The defendant's burden is to show a fair trial could not otherwise be had, not merely that severance would enhance the prospects for acquittal. *Drane v. State* (1982), Ind., 442 N.E.2d 1055. In this case Appellant motioned for severance, alleging co-defendant Dunville had been argumentative and boisterous during pre-trial proceedings. At one stage during *voir dire* defendant Dunville was warned to behave more respectfully. As *voir dire* continued Dunville modified his behavior and the trial court stated, in response to Broadus' motion, that Dunville was not disruptive during the proceedings. Thus, the trial court denied the motion. Appellant Broadus does not substantiate his allegation that the situation was otherwise. Further, to determine whether actual prejudice resulted from nonseverance, we look at what actually happened at trial. *Dudley v. State* (1985), Ind., 480 N.E.2d 881; *Baysinger v. State* (1982), Ind.App., 436 N.E.2d 96, *reh. denied.* Broadus alleges the trial was interrupted several times by Dunville's outbursts. However, the record reveals that of the three instances to which Broadus refers, none substantially prejudiced him. Once Dunville spoke too loudly with his attorney. When the trial court requested he lower his voice, Dunville complied. Another instance involved an outburst outside the presence of the jury; therefore no prejudice occurred. In the last instance Dunville was warned by the trial court that his talking during court proceedings could cause him to be gagged. Dunville responded immediately and refrained from offering further comment. These situations were not so disruptive as to prejudice Broadus.

Broadus also alleges Dunville injected numerous irrelevant and damaging issues. However, he fails to cite to the record and demonstrate one such example of this behavior. Next Broadus alleges the fact that Dunville was shackled during part of the trial greatly prejudiced Broadus. Dunville was shackled after threatening a security officer during a lunch hour. Dunville had told a security guard that if Dunville could gain possession of the guard's gun, he would shoot him. Upon review of the record, it is apparent Dunville was in fact belligerent and uncooperative at times. However, our inquiry is confined to whether Dunville's actions were so prejudicial as to deny Broadus a fair trial. With regard to the shackles the jury viewed, the court admonished the jury to completely disregard the shackling as far as Broadus' guilt or innocence was concerned. An admonition to a jury is presumed to cure any error. The granting of a mistrial is within the sound discretion of the trial court and clear error must be demonstrated before this Court will reverse the trial court's denial of a motion for mistrial. *Johnson v. State* (1982), Ind., 432 N.E.2d 1358. Although Appellant Broadus technically motioned for a severance, severance at this stage would have entailed a mistrial. Thus the rule from *Carter* applies here. Broadus has failed to demonstrate any harm resulting from Dunville being shackled. His mere allegation that the jury used their observation of Dunville shackled to the prejudice of Broadus insufficiently supports this assignment of error.

## VI

Appellant Dunville next asserts the trial court erred by submitting to the jury the court's instruction containing an "Allen charge," thereby unduly influencing the jury. In *Lewis v. State* (1981), Ind., 424 N.E.2d 107, 109, *reh. denied*, we stated:

"The 'Allen charge,' a designation given to a supplemental charge given by a trial judge to an apparently *deadlocked* jury is named after the first major case which considered such a charge, *Allen v. United,* (1896) 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed.2d 528." (emphasis added).

In the instant case, the instruction was given to the jury before they initially retired for deliberation. It is clear that the giving of a supplemental instruction in the nature of an "Allen charge" is reversible error pursuant to the decisions of this Court. *Capitol Builders, Inc. v. Shipley* (1983), Ind., 455 N.E.2d 1135; *Crowdus v. State* (1982), Ind., 431 N.E.2d 796; *Burnett v. State* (1981), Ind., 426 N.E.2d 1314. The following excerpt is the language being challenged in this case; however, it is merely a portion of the lengthier instruction given to the jury:

"If you should fail to reach a decision, this case will be left open and undecided. Like all cases it must be disposed of at some time. Another trial would be a heavy burden on both sides.

There is no reason to believe that the case can be tried again any better or more exhaustively than it has been. There is no reason to believe that more evidence or clearer evidence would be produced on behalf of either side.

There is no reason to believe that the case would ever be submitted to twelve people more intelligent, more impartial or more reasonable than you. Any future jury must be selected in the same manner that you were."

In *Lewis v. State* (1981), Ind., 424 N.E.2d 107, the giving by the trial court of a modified "Allen charge" after the jury indicated difficulty in arriving at a verdict was raised on appeal. The language of the modified "Allen charge" in *Lewis* is identical to that used in the case at hand. The Court of Appeals had found in *Lewis* that the giving of this instruction constituted reversible error. However, we reversed the Court of Appeals and in so doing thoroughly discussed modified "Allen charge" instructions. In deciding *Lewis*, we cited with approval *Guffey v. State* (1979), 179 Ind.App. 503, 386 N.E.2d 692, 697, which dealt with the same instruction used in *Lewis*. Although the Court of Appeals in *Guffey* cautioned trial judges as to the use

of certain portions of the instruction, the court further found the giving of the instruction was not reversible error. We renewed that caution in *Lewis* and recommended language approaching the "Allen charge" not be used. Although we do not condone the use of paralleling language to the "Allen charge," in the case at hand where the modified "Allen charge" was given with the initial set of instructions, it was clearly harmless error.

### VII

Appellant Dunville argues next that the trial court erred in not allowing him to represent himself. The right to self-representation is one which must be asserted first clearly and *unequivocally*, and second, within a reasonable time prior to the first day of trial. *Russell v. State* (1978), 270 Ind. 55, 383 N.E.2d 309, (emphasis added). Dunville's motion to act as his own attorney was argued and decided two months before the trial. However, Dunville did not unequivocally state his request prior to trial. Rather, his request was contingent upon his transfer to the Indiana State prison. The trial court docket, inasmuch as Dunville's motion to represent himself is not included in the record, states the following:

> "State of Indiana in Court by Mark S. Crowder, Deputy Prosecuting Attorney. Defendant in Court in person and by R. Brent Zook, his attorney. Cause coming on for hearing on Defendant's Motion to Act as his Own Attorney and Defendant's Motion for Order to Transport Defendant to the Indiana State Prison for safekeeper. Defendant advises that the Motions are contingent upon one another and that *he does not want the Motion to Act as His Own Attorney granted if he is not transported to the Indiana State Prison as a safekeeper*. Arguments of Defendant heard. Motion to Transport and to Act as His Own Attorney denied.

> The Co-Defendant herein, George Jackson under Cause No. 8414, heretofore requesting a Speedy Trial, this cause is now set for trial January 16, 1984, at 9:00 A.M. to a jury." (emphasis added).

Dunville's motion was equivocal and therefore, it was not error for the trial court to deny Dunville's motion. Although at a later date, Dunville was transferred to the Indiana State Prison, his motion to represent himself was not renewed at that time. Further, Dunville made several requests during trial to proceed without counsel. As his requests were untimely, it was solely a matter of discretion for the trial court to allow Dunville's request. *Russell, supra.* Clearly, the trial court's denial of such requests was not an abuse of discretion as Dunville behaved intermittently in a manner requiring physical restraint. Once the trial court even threatened to gag Dunville. For these reasons we find the trial court did not abuse his discretion in refusing to allow Dunville to represent himself.

### VIII

Dunville next assigns as error the ineffective assistance of counsel. The guidelines for determining competency of counsel require deciding first, whether counsel's performance was so deficient that he or she was not functioning as counsel as guaranteed by the Constitution, and, if so, second, whether this failure to function as counsel was prejudicial such that Defendant was deprived of a fair trial. A fair trial will be deemed to have been denied when the conviction or sentence resulted from a breakdown in the adversarial process that rendered the result unreliable. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Jackson v. State* (1985), Ind., 483 N.E.2d 1374; *Berry v. State* (1985), Ind., 483 N.E.2d 1369. First, Dunville alleges trial counsel was ineffective for failing to object to a hearing impaired juror and an all Caucasian jury. Both of these allegations have been addressed *supra* as assignments of error and dismissed as unfounded. Accordingly, counsel wisely withheld objections to these unfounded errors. Next, Dunville contends counsel's failure to investigate suggested defenses and witnesses rendered counsel's assistance ineffective. However,

in support of this contention, Dunville merely cites one example during trial in which Dunville made the statement that there were other witnesses to support his defense. Dunville never named such witnesses or claimed he asked his attorney to contact them. This evidence alone so weakly substantiates Dunville's claim that counsel failed to investigate plausible defenses and possible witnesses that we find such claim clearly unsupported by the briefs and record. Finally, Dunville asserts counsel failed to ask questions on cross-examination that in Dunville's opinion would have acquitted him. Once again the record merely reveals that Dunville made this accusation against counsel at trial. Neither Appellant's brief nor the record set out how these questions would have demonstrated Dunville's innocence. In sum, Dunville has made a host of allegations which, if true, may have rendered counsel's assistance ineffective. However, he has not substantiated even one of the alleged instances of ineffectiveness with any facts. Accordingly, he has failed to demonstrate he was denied effective assistance of counsel.

## IX

 Appellant Dunville contends it was reversible error for the jury to view him shackled during trial. Shackling is a permissible method of dealing with disruptive and unruly defendants. *Illinois v. Allen* (1970) 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353. Further, it is not an abuse of discretion to order a defendant to return to the courtroom shackled in front of the jury when Defendant created the difficult situation by his own conduct. *Randall v. State* (1983), Ind., 455 N.E.2d 916. The trial court ordered Dunville shackled when during a lunch hour he threatened a security guard by telling him if Dunville could reach the guards gun he would shoot him and others. The trial court, having already been well acquainted with Dunville's uncooperative nature, concluded the threat posed a very real and potential danger. The record indicates however that the trial court took the added precaution of having Dunville seated, shackles hidden, before the jury returned to the courtroom. Because of this situation, all counsel agreed that no admonishment to the jury was necessary, as it would only call attention to the fact Appellant was shackled. The State claims Dunville, upon return of the jury, stood and flaunted the shackles. Although the record is unclear as to whether this was, in fact, the reason Dunville's attorney requested admonishment moments after the jury returned, it is clear the trial court admonished the jury to disregard the shackles in determining Dunville's verdict. This admonition is presumed to have cured any prejudice caused by the jury having viewed the shackles, and Dunville has failed to demonstrate otherwise. To override the trial court's determination that an admonition was sufficient to cure any prejudice, the test is not exclusively the manner in which evidence entered the case, rather the probable impact of the irregularity on the verdict. *Wagner v. State* (1985), Ind., 474 N.E.2d 476; *Davis v. State* (1981), 275 Ind. 509, 418 N.E.2d 203. Here the jury already had observed Dunville's uncooperative nature. Further, as demonstrated *infra* in addressing the sufficiency of evidence, the record is replete with overwhelming evidence of Dunville's involvement and guilt in the crime. Thus the probable impact, in light of the admonition, was not so prejudicial as to have denied Appellant his Sixth Amendment right to a fair trial.

## X

 Dunville claims the trial court erred in admitting State's Exhibits 41 through 55, photographs of the crime scene, without a proper foundation. The investigating detective, Sam Johnson, testified concerning the scene of the crime. He described the interior of the Villa Pizzeria and testified State's Exhibits 41 through 55 depicted the scene following the crime. Dunville alleges that it was brought out at trial that Detective Johnson did not have direct knowledge of the taking of the photographs and therefore the State failed to

lay a proper foundation for them. A proper foundation is laid for photographs if there is testimony from a reliable source that the photographs are accurate representations of the things they are intended to portray. *Jones v. State* (1983), Ind., 456 N.E.2d 1025. Upon reviewing the record, Detective Johnson's testimony reveals that he was in charge of investigating the crime and visited the scene of the crime shortly following the robbery. Photographs were taken shortly after he left the premises. He obviously was a reliable source to testify as to whether the photographs accurately depicted what they intended to portray, the scene of the crime after the robbery. Accordingly, a proper foundation for the photographs was laid.

## XI

Appellants Dunville and Broadus next contend the trial court engaged in improper sentencing procedures. Broadus and Dunville were charged with robbery while armed with a deadly weapon. However, due to a typographical error, when the jury returned its verdict, it found Appellants guilty of burglary, instead of robbery, while armed with a deadly weapon. The trial court determined that there was a typographical error on the verdict sheets and amended them to read guilty of robbery while armed with a deadly weapon. The court polled each juror before discharging them and received a unanimous response that they intended to find Defendant guilty of robbery, not burglary. Appellants argue it was improper for the court to poll the jury when they returned an incorrect verdict because each juror was subjected to the coercive effect of the courtroom. Appellants rely upon *Manns v. State* (1984), Ind.App., 459 N.E.2d 435 to support their position. However, *Manns* is distinguishable from the present case. In *Manns* the Court of Appeals held it error to discharge the jury in a theft prosecution after it returned a defective verdict finding the defendant guilty of possessing stolen property. In deciding *Manns,* the Court of Appeals relied upon *West v. State* (1950) 228 Ind. 431, 92 N.E.2d 852, wherein it was

stated that if the verdict is defective in substance it is a duty of the trial judge to have it amended by the jury *before* the jury is discharged. *West* further stated that there can be no amendment of a verdict in material part after the jury has been discharged. The Court of Appeals found the trial court erred in *Manns* by discharging the jury before it fulfilled its duty to make sure the verdicts were not faulty, but went on to hold that the declaration of a mistrial was not error. Thus *Manns* and *West* are distinguishable from the present case in that the jury had not been discharged when the trial court detected and addressed the error in the verdict. Appellants' argument, unsupported by any authority, goes one step further and challenges the propriety with which the verdict was corrected. We have examined the record and found that in the instructions read to the jury, robbery while armed with a deadly weapon, was repeatedly referred to and defined by the court. Also, the jury was well acquainted with the single crime with which Appellants were each charged. Neither counsel caught or objected to the typographical error on the verdict form before its submission to the jury, and the trial court made the same oversight. However, from the record we find it quite clear that the jury realized it was convicting Appellants of robbery and did not intend to convict Appellants of burglary. Accordingly, it was harmless error, if error at all, for the trial court to poll the jurors instead of sending them back to the jury room for further deliberation.

## XII

Finally, Appellants argue there was insufficient evidence to support their convictions. Each argues that the only direct evidence in the case, identification by the victims, was totally unreliable. Further, each claims the circumstantial evidence introduced at trial was so weak that no reasonable person could conclude beyond a reasonable doubt that they had committed the crime. When sufficiency of evidence is challenged on review, this Court

will neither weigh the evidence nor determine the credibility of witnesses, but rather, will look at the evidence most favorable to the state together with all reasonable inferences therefrom. We will then determine if there is substantial evidence of probative value from which the trier of fact might reasonably infer guilt beyond a reasonable doubt. *Hill v. State* (1985), Ind., 483 N.E.2d 746; *Newman v. State* (1985), Ind., 483 N.E.2d 36.

In Issue I we thoroughly addressed the fact that the victims' description of the robbers was modified after the victims viewed Appellants' pictures in the paper. The victims, strongly convinced that the two individuals in the newspaper were the robbers, contacted the police immediately to notify them of the mistakes they had made in identifying the perpetrators. Having already held that it was permissible for the victims to identify Appellants in court after having viewed the newspaper pictures, we now find that the victims' in-court identification of Appellants was sufficient evidence to support their convictions.

Appellants also claim that the rest of the evidence introduced at trial was merely circumstantial and of such weak probative value that the verdict cannot stand. This evidence consisted of a small revolver found in Appellants' car, along with dark clothes, rolls of coins, and approximately three hundred ($300.00) dollars in cash. All these items fit the general description of items as given by the victims. Also, although Appellants were not arrested in clothes fitting the description of the robbers' clothing, one of them was observed exiting a restroom with dark blue jeans in his arms. Because a conviction may be sustained on the uncorroborated testimony of a victim, this circumstantial evidence merely substantiated the victims' testimony that Appellants were the robbers. Furthermore, not one, but both, victims testified Appellants were the robbers. Thus, the evidence was even stronger than the uncorroborated testimony of a single witness. There was sufficient evidence from which the jury could find Appellants guilty beyond a reasonable doubt. Accordingly, the judgment of the trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, SHEPARD and DICKSON, JJ., concur.