**Dennis J. MOORE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 45S00-8805-CR-461.**

Supreme Court of Indiana.

Aug. 2, 1990.

Dennis J. Moore, Michigan City, pro se.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of two counts of Murder, and the finding that appellant was a habitual offender. The trial court sentenced appellant on Count I, Murder, to an enhanced sentence of eighty (80) years, and on Count II, Murder, to fifty (50) years, with the sentences to run consecutively.

The facts are: On December 15, 1986, Cynthia Wright and her boyfriend, Cleveland Walker, resided at 1730 Monroe Street in Gary, Indiana, with their three children. Both Wright and Walker were acquainted with appellant and had an arrangement with him to handle drug transactions in their apartment. Appellant rented the

apartment above Wright and Walker and lived in an apartment across the street.

Wright testified that on the morning of December 15, 1986, she noticed that appellant was crying. When she asked why he was crying, he responded that he was tired of people "lying on him." After this conversation, Wright returned to her apartment. She informed her boyfriend, Walker, about the conversation and asked him to go upstairs and talk with appellant. Appellant indicated to Walker that Ben Parker and Emit Rafer had lied about him.

During the time Walker was talking to appellant, Wright was visiting with her girlfriend, Vicki Willis, and a man by the name of Kenny. Soon thereafter, Toni Cooper entered the apartment and approximately fifteen (15) minutes later, Ben Parker and Tracy Blackburn, the victims in this case, entered. Walker left appellant's apartment but soon returned and upon his return he saw Nate Rimpson and a man named Eric talking with appellant. During this conversation, Walker overheard them talking about killing Ben Parker.

Walker testified that appellant had some money and a .45 caliber handgun on the table and told Rimpson: "If you take this pistol and this money, I won't have to do the job. But if you don't, I will anyways [sic]." Appellant said that he was tired of this boy running around talking about killing him. Eventually, Walker returned to his apartment, and while Wright was doing Walker's hair, Rimpson, Eric, and appellant entered. Soon thereafter appellant left the apartment only to come back approximately fifteen minutes later.

Upon appellant's return, he asked to speak with Wright and Walker in their back bedroom. In addition, appellant also called Rimpson into the room and shut the door. Wright testified that appellant and Rimpson discussed what was about to happen. Walker testified that appellant acknowledged that Parker was a friend of both Walker and Rimpson but explained that what he was about to do had to be done because Parker could not be allowed to continue running around talking about killing him.

Appellant also told Wright that Parker and Blackburn could not leave the apartment, and when Wright asked appellant if she could leave with her children, he responded, "Nobody's leaving." Appellant next told her that he was going to take Willis and Cooper "for a ride," to which she responded by assuring appellant that Willis would not talk. Appellant told Wright, "Well, it's on you that she don't talk. If she does, something's going to happen to you and your man and your babies."

Appellant then confronted Parker and Blackburn and ordered Wright, Willis, and Cooper and the children to the storage room. Wright testified that while they were in the storage room she heard appellant and Parker arguing. Wright testified that she heard appellant say to Blackburn, "Bitch, get over there and sit in his lap bitch," to which Blackburn responded, "What's happening, Dennis? I thought me and you was sisters and brothers." Appellant responded by saying she was to blame for what was happening.

Appellant then told Parker, "I'll put a bullet in this gun, and if you kill this bitch, I'll let you live," to which Parker replied, "I can't do that, Moe." Next, a scuffle occurred and gunshots were fired. A few seconds later, Parker pleaded for his life and said he was hurt and told appellant, "Oh, I'm dead, Moe," to which appellant replied, "Oh, no, you're not, Mister." Then more shots were fired. Walker testified that he heard approximately fifteen to twenty shots fired in the bedroom. He also testified that Rimpson came out of the bedroom and asked for a rifle to make sure Parker was dead. Appellant told Rimpson that it was not necessary.

Soon thereafter appellant and Rimpson exited the bedroom and appellant handed Rimpson three to four guns. Appellant then instructed Rimpson to dispose of the guns while he, Walker, Eric, and Dwight Taylor moved the two bodies into Rimpson's car. Soon thereafter, appellant came to the storage room and warned the women not to say anything about the incident; then he released them. The bodies were dumped at an abandoned property.

At approximately 1:45 p.m., the bodies were found by police. Parker sustained nine gunshot wounds while Blackburn had four. The cause of death in both instances was determined to be multiple gunshot wounds from both .45 and .38 caliber weapons. On the same day of the incident, Toni Cooper contacted the detective division of the police department and talked to officer Joe Starks. Cooper like Wright and Walker testified regarding the shooting incident.

■ Appellant contends he was denied effective assistance of counsel and that there was a conflict of interest. The record reveals that on September 15, 1987, a pretrial conference was conducted. At this conference, Mr. Olson indicated that he was going to withdraw as counsel for appellant because of a letter appellant wrote to the Disciplinary Commission. During the pretrial conference, Mr. Olson provided a copy of the letter to the trial court. In the letter, appellant alleged that Olson passed along personal correspondence of appellant's to an F.B.I. agent without his consent to do so.

On September 22, 1987, Mr. Olson outlined his reasons for withdrawing as counsel. He expressed concerns involving only the deterioration of the attorney-client relationship and made no conflict of interest claim. The record further reveals that at the pretrial conference on September 15, 1987, counsel denied forwarding appellant's mail to anyone. Appellant, when questioned about this allegation, stated that he mailed the letter from the jail. Later, when F.B.I. agents came to appellant and indicated that they knew of his letter, he assumed his attorney had passed along the correspondence but presented nothing at the hearing to substantiate this. In addition, when the F.B.I. agents asked appellant whether he needed a lawyer or monetary assistance, he indicated that he did not and stated several times that he was satisfied with Olson's representation.

During the hearing on the motion to withdraw, counsel also informed the trial court that appellant did not mention the F.B.I. encounter for six months and indicated that this was an attempt to damage the attorney-client relationship. Counsel further indicated that he and appellant had argued over *pro se* motions which appellant wished to file thus causing interference with counsel's work on the case.

■ An indigent defendant has the right to representation by counsel, but has no right to representation by court-appointed counsel of his choice. *Carpenter v. State* (1986), Ind., 486 N.E.2d 1007. The trial court may refuse a motion for permission to withdraw if the court determines that there will be a resultant delay in the administration of justice, and the trial court's decision in this regard is left to its sound discretion. *Flowers v. State* (1988), Ind., 528 N.E.2d 57; *Carpenter, supra.*

In the present case, counsel tendered his motion to withdraw because of appellant's actions and the allegation of breach of confidentiality. During the final questioning at the hearing on the motion to withdraw, counsel asked appellant, "What do you want to do about the trial, with me or by yourself or with somebody else?" Appellant responded, "We'll take it to trial. I'll take it with him as my counsel."

In addition, the court asked appellant whether he was satisfied with his counsel, to which appellant replied, "Yes." The motion and hearing on the motion to withdraw arose within three weeks of trial during pretrial proceedings, and the trial court was concerned regarding the "late date" of the motion. In addition, appellant made no allegation of prejudice resulting from counsel's continued representation following the denial of the motion. The trial court did not abuse its discretion in denying counsel's motion to withdraw.

■ Appellant next contends the trial court erred in determining that on the first day of trial appellant's request to proceed *pro se* was untimely.

The record reveals that on the first day of trial appellant informed counsel that he wished to represent himself and have counsel act as an advisor. Counsel informed the court of appellant's request, and the trial court agreed to hear appellant's request. Appellant indicated that he could

handle the case a little better than his counsel because he had worked on the case longer than his counsel. The trial court pointed out to appellant that his request—made on the day the jury trial was to start—was not timely. Appellant then indicated that he believed that the court had given him two alternatives, that is, either go to trial with the court-appointed public defender or represent himself. The prosecutor replied by indicating his concern about the state of the record. He observed that appellant might be able to argue that he was forced into representing himself as opposed to accepting counsel with whom he expressed dissatisfaction. The court likewise showed concern involving the record but ultimately determined that appellant's motion was not timely.

█ The right to self-representation is one which first must be asserted clearly and unequivocally, and second, within a reasonable time prior to the first day of trial. *Broadus v. State* (1986), Ind., 487 N.E.2d 1298. In *Russell v. State* (1978), 270 Ind. 55, 383 N.E.2d 309, this Court concluded that the right of self-representation must be asserted within a reasonable time prior to the day on which the trial begins; thus morning-of-trial requests are *per se* untimely.

█ Even assuming for the sake of argument that appellant's request was timely filed, he fails to meet the other test for self-representation. When the duties of trial advocacy are shared by a defendant and his attorney, or when a defendant proceeds *pro se* with an attorney in an advisory capacity, it is a matter to be allowed or denied by the trial court in the exercise of its discretion. *Swinehart v. State* (1978), 268 Ind. 460, 376 N.E.2d 486. The decision of the trial court will not be overturned absent a clear showing of abuse of discretion. *Myers v. State* (1987), Ind., 510 N.E.2d 1360. In the present case, appellant asserts no prejudice arising from the denial of the request and failed to show an abuse of discretion by the trial court. We find no error.

█ Finally, appellant contends that a variance existed between the informations and proof presented at trial, which prejudiced him in the preparation and maintenance of his defense and thus violated his right to due process.

Appellant specifically argues that the two informations filed stated that he held a handgun and inflicted the mortal wounds on the victims, when the proof adduced at trial demonstrated that appellant procured two others to commit the charged offenses.

Appellant's argument merely calls for this Court to reweigh the evidence which was presented at trial. This we will not do. *Allen v. State* (1986), Ind., 496 N.E.2d 53. At trial, none of the witnesses testified to actually seeing the shootings, but their testimony certainly provided circumstantial evidence from which the trier of fact could reasonably infer that he was involved in the actual shooting of the victims. This Court has held that circumstantial evidence may be sufficient to support a murder conviction. *Id.*

This record reveals that appellant advised several witnesses of his plan to kill the victims; one witness overheard him arranging with two others to kill Parker; several witnesses testified that they saw appellant take guns into the bedroom where the victims were shot; and several witness overheard appellant taunt the victims between the shootings. The record further reveals that there were at the most two other men in the room with appellant and the two victims in addition to several guns of multiple caliber which were used. From the above, it is entirely reasonable to infer that shots were fired by the appellant. *Id.* Therefore we cannot say that a variance existed between the informations and the proof at trial. We find no error.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK, J., concur.

DEBRULER, J., concurs with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, concurring.

In resolving the claim that the trial court committed error when denying the public

defender's motion for permission to withdraw, the majority opinion states that the legal standard to be applied when ruling on such a motion is whether a grant of the motion will result in delay in the administration of justice. This accurately follows the language employed in previous cases of this Court in which I have concurred, for example, most recently in *Flowers v. State* (1988), Ind., 528 N.E.2d 57. However, it now appears to me that this formulation may be too abstract and may be misleading. I take this opportunity to simply point out, as the actual handling of these claims on appeal demonstrates, that in addition to the element of delay, it is appropriate to consider other relevant factors, including but not limited to, the nature of the charges, the nature of the defense, defense preparations, and the extent and cause of any breakdown in communications between client and counsel. The range of appropriate factors would approximate the range of factors considered when ruling on motions for continuance of the trial itself.

DICKSON, J., concurs.