## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2017, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald C. Swanson, Jr.
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ronald D. Billingsley-Smith, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 29, 2017 <br><br> Court of Appeals Case No. <br> 02A03-1612-CR-2769 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Frances C. Gull, Judge <br><br> Trial Court Cause No. <br> 02D06-1604-F5-102 |

**Mathias, Judge.**

[1] Following a jury trial in Allen Superior Court, Ronald Billingsley-Smith ("Smith") was convicted of Level 5 felony carrying a handgun without a license

and Class A misdemeanor possession of marijuana. Smith appeals and presents two issues, which we restate as: (1) whether the trial court erred by denying Smith's morning-of-trial request to represent himself, and (2) whether the trial court committed fundamental error when it admitted evidence seized during an inventory search of the vehicle Smith was driving. Concluding that Smith's request to represent himself was per se untimely, and that the trial court did not commit fundamental error, we affirm.

## Facts and Procedural History

[2] On the night of April 2, 2016, Sergeant Gary Hensler ("Sgt. Hensler") of the Fort Wayne Police Department was among the police officers watching Foster's bar, an establishment with a history of criminal activity. The police observed a man, later determined to be Smith, standing next to an automobile in the bar's parking lot. Before the man went inside the bar, Sgt. Hensler observed him lean into his car and appear to place something in the back seat. Since Foster's had a policy of prohibiting firearms, Hensler suspected that the man had placed a gun in his car. Sgt. Hensler ran the license plate of the car through his computer system, which revealed that the car was owned by Smith, who matched the description of the man seen next to the car, and whose driver's license was suspended. Smith stayed inside the bar for approximately half an hour, then left in the car.

[3] Knowing that the registered owner of the car, whose description matched Smith, had a suspended license, the police decided to pull the car over. Fort Wayne Police Detective Matthew Foote ("Detective Foote") activated the

emergency lights on his patrol car. Instead of stopping, however, Smith continued to drive. Detective Foote then activated his siren, but Smith still continued to drive, observing the speed limit and using his turn signals when appropriate. Smith later explained that he did not immediately stop because he wanted to get to an area with better lighting, where others could witness the stop.

[4] After driving for approximately one minute, Smith pulled into a gas station. The police ordered Smith out of the car at gunpoint in a procedure they termed a "high risk traffic stop," because Smith had not immediately stopped his vehicle. Tr. p. 40. Smith complied with the officer's orders and was taken into custody without incident. Because Smith's license was suspended, the police decided to impound the vehicle. Before doing so, they performed an inventory search of the car and found a bag of marijuana in the center console. The police also found a 9 mm handgun located in the pocket on the back side of the front passenger's seat. Smith denied knowing that the gun and marijuana were in the car and denied that they belonged to him. Unconvinced, the police arrested Smith.

[5] On April 6, 2016, the State charged Smith with Level 5 felony carrying a handgun without a license, Level 6 felony resisting law enforcement by fleeing in a vehicle, and Class A misdemeanor possession of marijuana. A jury trial was held on October 12 and 13, 2016. The jury found Smith guilty of carrying a handgun without a license and possession of marijuana but was unable to reach a unanimous verdict on the charge of resisting law enforcement. The trial court

held a sentencing hearing on November 15, 2016, at the conclusion of which it imposed a sentence of four years on the conviction for carrying a handgun without a license and a concurrent one-year sentence on the conviction for possession of marijuana. Smith now appeals.

## I. Smith's Request to Represent Himself

Smith first argues that the trial court erred when it denied his request to represent himself. On the morning of the first day of trial, Smith's attorney informed the trial court that Smith wished to represent himself. In response, the trial court questioned Smith to determine whether he was knowingly waiving his right to counsel. After being advised of all of the rights he would be foregoing by representing himself, Smith still indicated that he wished to proceed pro se. The trial court then questioned Smith regarding his capabilities to act as his own counsel. Smith conceded that he had no formal legal training but claimed that he had been informally studying the law since he had been released from incarceration on a prior conviction. Smith indicated that he could read and write the English language and had one year of college education. Howver, Smith had no trial experience, no experience selecting a jury, and had no familiarity with the Indiana Rules of Evidence

When the trial court indicated that it was prepared to deny Smith's request to represent himself, Smith interjected, "I don't think that's a fair trial." Tr. p. 14. The trial court responded as follows:

> Well, here's the problem, Mr. Billingsley-Smith: If you would
> have told me this six or eight weeks ago, we would have had—

you would have had more time to get ready for trial. You're telling me day of trial that you want to represent yourself. I've already found that you're not capable of representing yourself day of trial, I'm not gonna continue this trial for that reason. You don't know how to do what—the basics of trial [are], so you have a very able attorney that you have hired to represent you. He is perfectly capable of representing you and will give you a fair defense. It is not the practice of this Court nor any court to do hybrid representation, so you have an attorney—again, if you would have told me this several weeks ago or several months ago that you wanted to represent yourself, you would have had plenty of time at that point to get familiar with the things that you need to get familiar with to represent yourself, but you didn't do that and here we are day of trial, so your attorney is going to be representing you, sir. Are we all on the same page with that?

Tr. p. 14. Smith repeated his objection, claiming that forcing counsel on him was a violation of his Sixth Amendment rights, but the trial court still rejected his request to proceed pro se, again noting Smith's lack of experience and qualifications.

[8]     On appeal, Smith argues that the trial court's ruling denying his request to represent himself denied him his Sixth Amendment rights. A criminal defendant's Sixth Amendment right to counsel is essential to the fairness of a criminal proceeding. *Drake v. State*, 895 N.E.2d 389, 392 (Ind. Ct. App. 2009) (citing *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963)). Implicit in this right to counsel is the right of a defendant to self-representation. *Id*. (citing *Faretta v. California*, 422 U.S. 806, 819 (1975)). The accused must knowingly and intelligently forgo the many benefits he gives up by waiving the right to counsel. *Id*. Thus, when a defendant asserts his right to self-representation, the trial court

should advise the defendant of the dangers and disadvantages of self-representation. *Id.*

[9] The right to self-representation also must be asserted within a reasonable time *prior* to the first day of trial. *Id.* (citing *Campbell v. State*, 732 N.E.2d 197, 204 (Ind. Ct. App. 2000); *Olson v. State*, 563 N.E.2d 565, 570 (Ind. 1990)). Our supreme court has long held that a request to proceed pro se on the morning of trial is per se untimely, and denial of a request to proceed pro se on the ground of untimeliness is permissible. *Id.* (citing *Moore v. State*, 557 N.E.2d 665, 669 (Ind. 1990)).

[10] Our supreme court first held that morning-of-trial requests to represent oneself are per se untimely in *Russell v. State*, 270 Ind. 55, 62, 383 N.E.2d 309, 314 (1978). Since then, the court has never wavered from its holding. *See Stroud v. State*, 809 N.E.2d 274, 279 (Ind. 2004) (citing *Russell* in concluding that defendant's requests to represent himself were untimely); *Moore*, 557 N.E.2d at 669 (rejecting defendants morning-of-trial request to represent himself and have counsel act as his legal advisor); *Broadus v. State*, 487 N.E.2d 1298, 1304 (Ind. 1986) (affirming trial court's decision to deny request of defendant during trial to represent himself); *Smith v. State*, 474 N.E.2d 973, 979 (Ind. 1985) (citing *Russell* in rejecting defendant's claim that trial court erred by denying his request to proceed pro se); *Dixon v. State*, 470 N.E.2d 728, 730 (Ind. 1984) (noting in post-conviction appeal that defendant's request for self-representation had been made on the morning of trial and was therefore untimely); *Hunt v. State*, 459 N.E.2d 730, 733-34 (Ind. 1984) (affirming trial court's summary denial of

defendant's request, on morning of trial, to represent himself); *Dixon v. State*, 437 N.E.2d 1318, 1321 (Ind. 1982) (affirming trial court's denial of defendant's request to represent himself made on the morning of trial during jury voir dire);

Smith acknowledges the holding of *Russell* and the cases that follow it. However, he argues that *Russell* was decided incorrectly, referring to the dissent in that case and to other state and federal court decisions that have declined to follow the rule espoused in *Russell*. After discussing those cases, Smith concludes:

> Simply put, no good reason exists for the continued adherence to *Russell*. It represents a statement of law that is out of step with literally every other American jurisdiction. It is premised upon concerns which this case shows are either overstated, or non-existent. As Justice DeBruler stated [in his dissent in *Russell*], it "sanction[s] constitutional error." This Court should so find, should adopt an approach to day-of-trial requests for self-representation that is recognized by at least one other American jurisdiction, and should remand this case for a new trial where Smith's Sixth Amendment rights can be preserved.

Appellant's Br. at 17.

Even if we were inclined to agree with Smith's position, there exists a very good reason for our continued adherence to *Russell*: it remains the controlling precedent of our supreme court. We have explained before that

> we are bound by the decisions of our supreme court. Supreme court precedent is binding upon us until it is changed either by that court or by legislative enactment. While Indiana Appellate

Rule 65(A) authorizes this Court to criticize existing law, it is not this court's role to "reconsider" supreme court decisions.

*Dragon v. State*, 774 N.E.2d 103, 107 (Ind. Ct. App. 2002) (citations omitted), *trans. denied*.

[13] Unless and until our supreme court (or the Supreme Court of the United States) overrules the rule espoused in *Russell*, this court, as an intermediate appellate court, must continue to apply it. Under this rule, Smith's request to represent himself, which was made on the morning his trial was set to begin, was per se untimely, and it was wholly within the discretion of the trial court to deny this untimely request. *See Stroud*, 809 N.E.2d at 279; *Moore*, 557 N.E.2d at 669; *Broadus*, 487 N.E.2d at 1304; *Hunt*, 459 N.E.2d at 734; *Dixon*, 437 N.E.2d at 1321; *Russell*, 270 Ind. at 62, 383 N.E.2d at 314.

## II. Admission of Evidence

[14] Smith also argues that the trial court committed fundamental error in the admission of the evidence found in the inventory search of his car. Generally speaking, decisions regarding the admission of evidence are entrusted to the sound discretion of the trial court. *Bell v. State*, 29 N.E.3d 137, 141 (Ind. Ct. App. 2015), *trans. denied*. We review the trial court's decision only for an abuse of this discretion. *Id*. The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court misinterprets the law. *Id*.

Smith admits that he made no contemporaneous objection to the admission of the evidence he now claims was improperly admitted. A contemporaneous objection is required to preserve evidentiary error on appeal, and the failure to object waives the issue for purposes of appellate review. *Hastings v. State*, 58 N.E.3d 919, 922 (Ind. Ct. App. 2016). To avoid this waiver, Smith argues that the admission of the evidence seized from his car was fundamental error.

A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id*. (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). "The error claimed must either 'make a fair trial impossible' or constitute 'clearly blatant violations of basic and elementary principles of due process.'" *Id*. (quoting *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009)). Thus, the fundamental error exception is available only in "egregious circumstances." *Id*. (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)).

The *Brown* court explained that the fundamental error exception, as applied to a claim of the admission of evidence that is alleged to have been the subject of an unconstitutional search and seizure, is very limited:

> [A]n error in ruling on a motion to exclude improperly seized evidence is not per se fundamental error. Indeed, because

improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt. That is the case here. The only basis for questioning Brown's conviction lies not in doubt as to whether Brown committed these crimes, but rather in a challenge to the integrity of the judicial process. *We do not consider that admission of unlawfully seized evidence ipso facto requires reversal. Here, there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence is not what it appears to be. In short, the claimed error does not rise to the level of fundamental error.*

*Brown*, 929 N.E.2d at 207 (emphasis added); *see also Mamon v. State*, 6 N.E.3d 488, 490 (Ind. Ct. App. 2014) (noting that, absent a claim of fabricated evidence or willful malfeasance on the part of the police and no showing that the evidence is not what it appears to be, the claimed error in admission is not fundamental).

[18] Nor is this rule new to Indiana law. Almost forty years ago, our supreme court held that, even if evidence was obtained in violation of constitutional protections against unlawful searches and seizures, its introduction at trial "does not elevate the issue to the status of fundamental error that may be raised for the first time on appeal." *Swinehart v. State*, 268 Ind. 460, 466-467, 376 N.E.2d 486, 491 (1978). Under this rule, Smith has not established fundamental error.

[19] There is no suggestion of the fabrication of evidence or willful malfeasance on the part of the police who searched Smith's car. Smith claims that his own testimony that he was unaware of the existence of the marijuana and handgun

"may very well be sufficient to show that the evidence is not what it appears to be." Appellant's Br. at 24. We disagree. Smith's own testimony claimed only that he did not know that the gun and marijuana were in his car; his testimony in no way suggests that the gun and the marijuana were not what they appeared to be, i.e. an illicit substance and a handgun for which he did not have a permit.

[20] Accordingly, the admission of the evidence seized from the car was not fundamental error. *See Mamon*, 6 N.E.3d at 490 (rejecting claim of fundamental error where defendant argued only that police officer misunderstood the traffic law that was the basis of the stop of defendant's vehicle and defendant did not dispute the truth of the officer's testimony and related exhibits); *Rhodes v. State*, 996 N.E.2d 450, 454-55 (Ind. Ct. App. 2013) (holding that no fundamental error occurred where defendant did not make any claims of fabricated evidence or willful malfeasance and instead merely asserted that the evidence was improperly admitted as the result of an unconstitutional search); *Brown*, 929 N.E.2d at 208 (holding no fundamental error occurred where defendant did not make any claim of fabricated evidence or willful malfeasance on the part of the police and instead argued only that the evidence at issue was the product of an unconstitutional search and seizure); *Covelli v. State*, 579 N.E.2d 466, 471 (Ind. Ct. App. 1991) (holding that the admission of evidence obtained in violation of the defendant's constitutional rights to be protected against unlawful searches and seizures did not elevate that issue to the status of fundamental error).

# Conclusion

[21] Based on the controlling precedent of our supreme court in *Russell*, Smith's eleventh-hour request to represent himself was per se untimely, and the trial court acted within its discretion to deny Smith's belated request. Smith's claim of error regarding the admission of evidence fares no better, in light of the extremely narrow fundamental error exception, under which the admission of evidence seized as a result of an allegedly unconstitutional search is not fundamental error absent evidence of fabrication of evidence, willful malfeasance, or a showing that the evidence at issue is not what it appears to be. As this is not the case here, Smith's claim of fundamental error also fails.

[22] Affirmed.

Kirsch, J., and Altice, J., concur.