**David John CAMPBELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A01–0001–CR–37.**

Court of Appeals of Indiana.

July 14, 2000.

---

Bernard G. Reisz, Evansville, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BARNES, Judge

### Case Summary

David John Campbell appeals his convictions for burglary, a class B felony; theft, a class D felony; and contempt. We affirm.

### Issues

Campbell presents five issues for our review, which we restate as follows:

1.  whether the trial court improperly refused to conduct a hearing into his

competency to stand trial in accordance with Ind.Code § 35-36-3-1;

2. whether the trial court improperly denied a request by him to proceed pro se;

3. whether the trial court erred by excluding him from the courtroom on two separate occasions during the trial;

4. whether certain testimony presented by Lisa Saubier, a witness for the State, was so inherently unbelievable, improbable, and incredibly dubious as to require reversal of the convictions; and

5. whether he was entitled to have the jury instructed on and provided verdict forms for residential entry as a lesser-included offense of burglary, and conversion as a lesser-included offense of theft.

## Facts

The facts most favorable to the jury's verdicts reveal that between July 2 and 13, 1998, Campbell and two companions decided to burglarize the residence of Frank Saubier while the latter was on vacation. Campbell agreed to go to the house after having heard that others had already been there and removed property, as it sounded "good" to him and he was "trying to get ahead like the next man." Record at pg. 130. Upon arriving at the house, Campbell sat on a couch near a door where he and his companions had entered, while the others went through the house; Campbell was apparently asked to serve as a look out. When his companions found some guns and a camcorder, they did not give them to Campbell, who stated that he felt "used," Record at pg. 131, complaining that the "mother f* * *er wouldn't even give me" a gun. Record at pg. 133. Later, one of his companions from the burglary gave some gold coins to Campbell, which he believed came from the Saubier residence and which he pawned for $100.

The record reflects that Campbell's brief trial was eventful. On the first day, out of the presence of the jury, Campbell entered into a heated conversation with the trial judge regarding letters Campbell claimed to have addressed to the court but which were not received; during this conversation the trial judge indicated he would not permit Campbell to represent himself. This conversation prompted Campbell's attorney to request a psychiatric exam of Campbell to determine his competency to stand trial. Pursuant to this request, the trial court allowed Campbell's attorney to present two witnesses, a bailiff and Campbell's mother, to testify with respect to Campbell's competence. After hearing this evidence, the psychiatric evaluation motion was denied. Before recalling the jury, the trial judge asked Campbell if he wished to remain in the courtroom; Campbell said he did not and was removed. The State then played for the jury a taped statement Campbell gave to a police detective.

On the second day of trial, Campbell took the stand and testified that he had been coerced into giving his statement to the police and that he had never entered the Saubier residence but rather had remained in a car outside. He also stated that he knew Lisa Saubier, Frank Saubier's daughter, and that she had given permission to Campbell's companions to burglarize the residence. In rebuttal, the State called Lisa Saubier, who denied knowing Campbell and denied giving permission for others to burglarize her father's residence. In response to this testimony, Campbell had another violent outburst outside of the jury's presence, which resulted in Campbell's removal from the courtroom on the trial court's order and a finding that Campbell was in contempt. Over the objections of Campbell's attorney, the jury was instructed on the offenses of burglary and theft, but not on residential entry and conversion. The jury returned guilty verdicts on both counts and Campbell was convicted and sentenced accordingly for burglary, theft, and contempt.

## Analysis

### I. Competency Hearing

Campbell first contends that the trial court should have appointed mental health professionals to evaluate him and that it should have conducted a hearing into his competence to stand trial pursuant to I.C. § 35–36–3–1. The trial and conviction of one without adequate competence is a denial of federal due process and a denial of a state statutory right as well. *Brewer v. State*, 646 N.E.2d 1382, 1384 (Ind.1995). However, as Campbell recognizes, the right to a competency hearing pursuant to Ind.Code § 35–36–3–1 is not absolute.[1] Such a hearing is required only when a trial judge is confronted with evidence creating a reasonable or bona fide doubt as to a defendant's competency, which is defined as whether a defendant currently possesses the ability to consult rationally with counsel and factually comprehend the proceedings against him. *Id.* Whether reasonable grounds exist to order evaluation of competency is a decision that will be reversed only if we find that the trial court abused its discretion. *Anthony v. State*, 540 N.E.2d 602, 606 (Ind.1989), *reh'g denied.* A trial judge's observations of a defendant in court are an adequate basis for determining whether a competency hearing is necessary; such a determination will not be lightly disturbed. *Culpepper v. State*, 662 N.E.2d 670, 674 (Ind.Ct.App. 1996), *reh'g denied, trans. denied.* Furthermore, predictable stress from facing one's own felony trial does not warrant a competency hearing. *Collins v. State*, 643 N.E.2d 375, 379 (Ind.Ct.App.1994), *trans. denied.* Finally, when the circumstances do not indicate that a trial court should sua sponte order a competency hearing, the defendant has the burden of establishing that reasonable grounds for such a hearing exist. *Brown v. State*, 485 N.E.2d 108, 110 (Ind.1985).

Campbell presents two main contentions to support his argument that a competency hearing was required at his trial. First, he alleges that his numerous outbursts in and out of the courtroom, which led to his removal first at his own request and later per the trial court's order, constituted irrational behavior demonstrating impairment of his ability to understand the factual nature of the proceedings against him. Second, Campbell points to testimony given by his mother, in which she stated that Campbell has had "emotional problems since the day he was born," was "mentally incompetent and [was] a lot lower functioning than he appears to be," and that he had been treated by a psychiatrist while attending school in New Jersey. Record at pp. 111–112.

With respect to the first contention, the record is not clear that Campbell's profanity-laced tirades were indicative of incompetence. Rather, the evidence demonstrates that Campbell's outbursts were most likely related to the stress of the trial, his unhappiness with its progression, and his violent disagreement with testimony presented against him.

Second, the testimony of Campbell's mother, regarding her belief that he was incompetent and that a psychiatrist had treated him several years earlier while he was in school, did not require the trial court to order a professional evaluation of Campbell. *See Dudley v. State*, 480

---

1. As noted, the trial court did hold a competency hearing of sorts by permitting Campbell's attorney to call two witnesses, a bailiff and Campbell's mother, who presented evidence relevant to competency. This was not a hearing in accordance with I.C. § 35–36–3–1, which requires the appointment of professionals to examine a defendant and testify as to their opinion regarding competency; nevertheless, it does indicate an effort by the trial court to ascertain all of the information Campbell's attorney wished to present before deciding that a hearing under I.C. § 35–36–3–1 was unnecessary. Such an inquiry further validates the trial court's conclusion. *See Dudley v. State*, 480 N.E.2d 881, 895 (Ind. 1985), *habeas corpus granted on other grounds*, 854 F.2d 967 (7th Cir.1988) (trial court properly conducted a limited inquiry into defendant's competence, without appointing psychiatrists, after the matter of competency was raised).

N.E.2d 881, 894–95 (Ind.1985), *habeas corpus granted on other grounds,* 854 F.2d 967 (7th Cir.1988) (trial court did not err by refusing to appoint psychiatrists to examine defendant's competency after it heard testimony from defendant's mother that defendant had received psychiatric counseling nine years earlier and there was a history of mental illness in the family). Campbell cites no authority for the proposition that a layperson's contention that an individual is incompetent should be conclusive and binding upon a trial court with respect to holding a competency hearing under I.C. § 35–36–3–1. Moreover, Campbell's mother was unable to state that any court had ever adjudged him incompetent.

We note that, in addition to Campbell's claimed indicators of incompetency that the trial court rejected, there is substantial evidence in the record that he was able to comprehend and assist in the proceedings without difficulty. Among other things, he testified on his own behalf after asking for clarification about how much of his past criminal record could thus be brought in by the State, and it appears that Campbell's testimony was rational and lucid. *See Duffitt v. State,* 519 N.E.2d 216, 222 (Ind.Ct.App.1988), *aff'd on other grounds,* (allegation that trial court improperly denied competency hearing rejected where defendant testified on his own behalf and testimony revealed factual comprehension of the proceedings).

■ We see no basis for reversing the trial court's determination that there was no reasonable or bona fide doubt as to Campbell's competency. The presence of evidence requiring a trial court to conduct a competency hearing under I.C. § 35–36–3–1 must be determined according to the facts of each case. *Feggins v. State,* 272 Ind. 585, 587, 400 N.E.2d 164, 166 (1980).

## II. Request to Proceed Pro Se

■ Next, Campbell asserts that the trial court erred by not allowing him to proceed pro se. A criminal defendant has the right to waive counsel and proceed pro se if it is shown that he does so of his own free will, knowing and understanding his constitutional right to be represented by counsel. *Olson v. State,* 563 N.E.2d 565, 570 (Ind.1990). However, Campbell's argument before this Court fails for two reasons.

■ First, a defendant must clearly and unequivocally assert the right to self-representation. *Id.* While Campbell argues in his brief that he made a "clear and unequivocal request" to represent himself (Appellant's brief at 14), we find no indication of such a request in the record. For example, Campbell claims he made a request to proceed pro se at pages 94 through 98 of the record, which reflects the following dialogue:

"Campbell: I want, I want to get my own attorney.

Court: It's too late for that. The trial has already started.

Campbell: What kind of bull s* * * is this. I'm sorry your Honor. I'm just saying, you know, when I requested to fire him months ago, you know, I was told I couldn't.

Court: That's right.

Campbell: I've sent letters—besides that. You know I have nothing against Mr. Bohleber but, you know, . . .

Court: The trial has started. The trial has started. You're not going to represent yourself at this point. It's too late. This is the first I've heard of this. We're not going to stop the trial now and let you represent yourself."

Record at pp. 97–98.

Later in the trial, following Campbell's lengthy complaints to the trial court that jail officials had mistreated him and that they had failed to deliver mail he had written to the court, the trial judge stated that "we have a trial here that I need to finish Mr. Campbell and that's my concern. Now you're not going to be allowed to

represent yourself at this point." Campbell responded "of course not." Record at pg. 172.

These are the only two portions of the record where Campbell claims the trial court denied requests to proceed pro se. However, it is evident that no specific requests are reflected in the record. While the trial judge twice stated he would not allow Campbell to represent himself, it is apparent that such remarks were made in anticipation of Campbell making such a request, or out of frustration at attempting to conduct the trial of a belligerent and disruptive defendant. The judge's second statement to that effect appeared to be directed toward Campbell's continuing discussion regarding his alleged mistreatment at the jail. Furthermore, Campbell's "of course not" response to the trial judge's statement that he would not allow him to proceed pro se gives the clearest indication that Campbell never intended to make such a request.

■ The second flaw in Campbell's argument is that the right to self-representation must be asserted within a reasonable time prior to the first day of trial. *Olson,* 563 N.E.2d at 570. Specifically, our supreme court has held that a request to proceed pro se on the morning of trial is per se untimely, and denial of a request to proceed pro se on the ground of untimeliness is permissible. *Moore v. State,* 557 N.E.2d 665, 669 (Ind.1990). Thus, even if Campbell had clearly and unequivocally asserted his right to self-representation during the course of his trial, such request was per se untimely and its denial would have been proper.

### III. Removal from the Courtroom

■ Campbell next claims the trial court improperly conducted his trial in his absence on two separate occasions. A criminal defendant's right to be present at his trial derives from the Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 13 of the Indiana Constitution. *See Ridley v.*

*State,* 690 N.E.2d 177, 180–81 (Ind.1997). However, a defendant's right to be present under either the United States or Indiana Constitutions may be waived if such waiver is knowing and voluntary. *Harrison v. State,* 707 N.E.2d 767, 785 (Ind.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1722, 146 L.Ed.2d 643 (2000); *Dodson v. State,* 502 N.E.2d 1333, 1337 (Ind.1987).

■ On the first day of the trial, Campbell was removed from the courtroom after his counsel presented evidence questioning his competence outside of the jury's presence. Immediately before his removal, he and the trial judge had the following conversation:

"Court: Do you not wish to be present Mr. Campbell?

Campbell: No. I don't want to hear any more of this.

Court: You understand you have a right to be present?

Campbell: I want to go upstairs. I don't want to hear this no more.

Court: Do you understand that your trial will proceed without you?

Campbell: I don't care. Do you not understand? I don't care. This is all a big ass lie. Can I go upstairs now please?

Court: All right. Remove the Defendant and take him back to jail."

Record at pg. 115.

Before evidence on Campbell's competency was presented, he had expressed his displeasure with the progress of his trial by engaging in a disrespectful, profanity-laced tirade, during which he said among other things "I'm going to go back upstairs. I'm through with this bulls* * *.... Just go ahead and handcuff me and bring me upstairs, you know what I'm saying? ... F* * * this bulls* * *.... I got f* * *ed upstairs from the Sargent (sic).... I didn't do this s* * *." Record at pp. 95–97. Clearly, the trial judge afforded every opportunity for Campbell to remain in the courtroom

when he refrained from immediately removing him and instead later asked Campbell if he wished to remain after advising him of his right to be present. Campbell's absence from the courtroom on the first day of trial was the result of an express, voluntary, and knowing waiver of his right to be present and thus no error resulted from continuing the trial in his absence.

■ On the second day of the trial, just before closing arguments were set to begin, Campbell had an emotional outburst, again outside the jury's presence, that caused his statements on the first day to pale by comparison.[2] Some extracts from that outburst follow:

"Campbell: You got my life in your hands, right, and I can't prove my mother f* * *ing innocence. What the f* * * is that?

Court: That's contempt of Court.

Campbell: I don't give a f* * * what it is.

Court: That's contempt of Court.

Campbell: AAAAAAAAAAAAAA! What about it?

Deputy: Shall I take him out Your Honor?

Court: No. No. Let's . . .

Campbell: It's my life. Not yours man. I didn't do it man and I'm going to prison for some s* * *.

* * * * *

Campbell: Do what the f* * * you're going to do. It's your f* * *ing house ain't it?

* * * * *

Court: Turn around and listen to me.

Campbell: I don't want to hear you.

Court: Sit down and be quiet.

Campbell: Shut the f* * * up.

Court: All right. You're in contempt of Court again.

Campbell: You shut your mother f* * *ing mouth.

Audience: Dave you're talking to a Judge.

Campbell: I don't give a f* * * who I'm talking to.

Court: All right. Take him out."

Record at pp. 213–215.

As noted, an accused's right to be present during his trial may be knowingly and voluntarily waived. Campbell's removal on the second day of trial may not have occurred as the result of an express request, as on the first day of trial. Nevertheless, we feel that by his contemptuous conduct, Campbell knowingly and voluntarily relinquished his right to be present at the closing arguments in his trial.

The United States Supreme Court has held that

a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

*Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970). While the Supreme Court in *Allen* was only addressing the Sixth Amendment right to be present at trial, we can perceive of no reason why an identical waiver rule should not also be applicable to Article I, section 13 of the Indiana Constitution.[3] *Cf. Jenkins v. State,* 596 N.E.2d

2. The trial court had agreed to permit Campbell to be present in the courtroom at the beginning of the second day of trial.

3. Our supreme court cited *Allen* with approval in *Perry v. State,* 471 N.E.2d 270, 275

(Ind.1984). However, that case did not address the right to be present at trial under the Indiana Constitution. Also, the court held the defendant "by his conduct *and his express statements*" that he wanted to leave had

283, 285 (Ind.Ct.App.1992) (defendant waived right to be present at trial pursuant to United States and Indiana Constitutions when he entered courtroom visibly intoxicated).

The trial judge had given stern warnings to Campbell on the first day of trial regarding his behavior and statements and had indicated that contemptuous behavior would result in removal, when he stated that "[i]f you're going to be in this courtroom you're going to be quiet, you're going to behave, going to behave yourself and act in a dignified manner." Record at pp. 105–106. At the start of trial on the second day, the trial judge asked Campbell if he wished to attend the trial, and told him that if he did so he would have to "control his temper," to conduct himself "in a dignified manner," and to not "have any more emotional outbursts or carrying on." Record at pp. 173–174. Upon the beginning of the second day's outburst, the trial judge reminded Campbell of this when he said "we went through this yesterday. Well actually went through it several times yesterday. We're not going to go through it again." Record at pg. 211. The trial judge sufficiently warned Campbell of the possible consequences of continuing to act in an undignified manner. Furthermore, regarding whether Campbell had in fact acted in a disorderly, disruptive, and disrespectful manner on the second day of trial, we believe the record quoted above speaks for itself. Therefore, it was not erroneous to proceed with the closing arguments without Campbell being present.

While we respect the right of an accused to be present at his or her trial, we cannot accept that the right may be abused with impunity. The trial judge was extraordinarily patient with Campbell and provided him with every opportunity to remain in the courtroom, as evidenced by the fact that on neither day of the trial did he immediately remove Campbell when the verbal assaults began; additionally the trial judge had agreed to allow Campbell to return to the courtroom on the second day of trial. We conclude this portion of our opinion by quoting further from, and expressing our agreement with, Justice Black:

> [i]t is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

*Allen,* 397 U.S. at 343, 90 S.Ct. at 1061.

### IV. Inherently Unbelievable, Improbable, and Incredibly Dubious Testimony

■ Campbell claims that the testimony of Lisa Saubier, a rebuttal witness for the State, was so inherently unbelievable, improbable, and incredibly dubious that reversal of his convictions is required. With respect to this issue, Campbell's brief (at pp. 17–18) contains no citations to authority or to the record. While this issue could thus be considered waived on appeal for failure to comply with Ind. Appellate Rule 8.3(A)(7), we will exercise our discretion to consider it, though briefly.

■ When reviewing a conviction for sufficiency of the evidence, an appellate court generally may not reweigh the evidence or judge the credibility of witnesses. *White v. State,* 706 N.E.2d 1078, 1079 (Ind. 1999). However, under the "incredible dubiosity" rule, a court may impinge upon the jury's responsibility to judge the credibility of witnesses when confronted with inherently improbable, coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *White,* 706 N.E.2d 1078,

waived his right to remain in the courtroom (emphasis added). Here, Campbell made no express statements on the second day of trial that he wished to leave.

1079. Incredibly dubious or inherently improbable testimony is that which runs counter to human experience, and which no reasonable person could believe. *Heeter v. State,* 661 N.E.2d 612, 615 (Ind.Ct. App.1996).

■ Here, we see no indication of any such testimony on the part of Lisa Saubier. Campbell apparently objects to Lisa's repeated assertions that she did not know Campbell and that she had not invited Campbell's burglary companions to steal from her father's house. To be sure, this directly contradicts Campbell's own testimony, but nothing about it runs counter to human experience, and reasonable persons could certainly believe it. Additionally, Lisa's testimony was unequivocal, as she simply and directly answered "no" to questions regarding whether she knew Campbell or gave permission for others to enter the house. The jury was merely carrying out its well-recognized duty as a fact finder when it chose to believe Lisa Saubier and not David John Campbell.[4]

### V. Lesser–Included Offense Jury Instructions and Verdict Forms

■ Finally, Campbell asserts that the trial court erred when it did not instruct the jury on and provide verdict forms for residential entry as a lesser-included offense of burglary and conversion as a lesser-included offense of theft. When asked to instruct the jury on a lesser-included offense, the trial court is required to determine whether the lesser offense is inherently or factually included in the crime charged. *Barker v. State,* 695 N.E.2d 925, 932 (Ind.1998), *reh'g denied.* A lesser offense is inherently included in a greater offense if the alleged lesser-included offense may be established by proof of the same material elements or less than all

the material elements defining the greater offense. I.C. § 35–41–1–16(1); *Wright v. State,* 658 N.E.2d 563, 566 (Ind.1995). If inherently included, the lesser-included offense instruction must be given if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense. *Barker,* 695 N.E.2d at 932.

■ It is readily apparent that the crime of residential entry is inherently included in the offense of burglary as a class B felony, as residential entry contains all of the elements of burglary as a class B felony except that it does not require proof of intent to commit a felony in the dwelling that is entered. *Compare* I.C. § 35–43–2–1 *with* I.C. § 35–43–2–1.5. Likewise, conversion is inherently included in the offense of theft, as both require proof of knowingly or intentionally exerting unauthorized control over property of another person, while theft additionally requires proof of intent to deprive the other person of any part of the property's value or use. *Compare* I.C. § 35–43–4–2 *with* I.C. § 35–43–4–3.

■ Therefore, with respect to Campbell's contention that he was entitled to an instruction on residential entry as a lesser-included offense of burglary, we must determine whether there was a serious evidentiary dispute that Campbell intended to commit a felony in Mr. Saubier's dwelling.[5] The only evidence that Campbell presented in his defense at trial was his own testimony, which contradicted a taped statement he had made to police and which had been played to the jury. In the taped statement, Campbell said that he had gone to the victim's house with two friends of his, including Willie, with whom he had talked about "doing a burglary. . . . For a lot of money." Record at pg. 130. Moreover, after admitting that he entered

---

4. Moreover, Campbell does not specify how it would make a difference regarding his guilt if in fact the jury did not believe Lisa Saubier.

5. Both Campbell and the State discuss the evidence concerning the breaking element of burglary. As "breaking" is an element common to both burglary and residential entry, we need not address that dispute.

the house, he said that he had agreed to act as a lookout for his two companions on the condition that "you all got to get me something." Campbell expressed disappointment that he "didn't get nothing. Nothing," Record at pg. 131, and that his companions were "greedy ... They took everything." Record at pg. 139.[6]

At trial, Campbell claimed the police had improperly coerced him into giving his incriminating statement while he was under the influence of marijuana and alcohol. Throughout his testimony, Campbell maintained that he never entered the victim's house while his companions burglarized it; rather, he asserted that he remained in a car outside at all times. The jury decided to give more credence to Campbell's taped statement to the police than to his in-court testimony, as was within their province.

That there was thus an evidentiary dispute in this case created by the discrepancy between Campbell's two versions of what happened on the night of the burglary is clear. However, the dispute did not revolve around whether Campbell had the requisite intent to commit a felony when he entered the victim's residence; rather, the dispute focused on the more basic issue of whether Campbell ever entered the residence at all. If the jury had chosen to believe Campbell's testimony that he had remained in the car and was an innocent bystander while his companions burglarized the residence, they would have been required to acquit Campbell not only of his burglary charge, but also of residential entry, if an instruction on that offense had been given, since entering is an element

common to both offenses. Therefore, we fail to see any error in the trial court's refusal to instruct the jury on residential entry or to provide a verdict form for it.

That Campbell was not entitled to an instruction on conversion as a lesser-included offense of theft is a much simpler issue, as there does not appear to be any evidentiary dispute at all concerning any of the elements of theft.[7] During his in-court testimony, Campbell affirmed his statements to the police that he pawned gold coins he knew were stolen, which had been given to him by one of his companions at the burglary victim's house and which he believed probably came from that house, and that he received proceeds from disposing of the coins. Further, Campbell's counsel during his closing argument stated that "[w]ithout question, Mr. Campbell's guilty of being in possession of stolen property. That's theft. He acknowledges it. He acknowledged it here today.... He said I'm guilty of theft." Record at pp. 234–235. We do not see any dispute that Campbell intended to deprive the gold coins' owner of their value and use, let alone that he knowingly exercised unauthorized control over them. There was thus no requirement that the jury be instructed on or provided a verdict form for the lesser-included offense of conversion with respect to the theft charge.

### Conclusion

We hold (1) the trial court did not abuse its discretion by refusing to conduct a hearing regarding Campbell's competency to stand trial pursuant to I.C. § 35–36–3–

---

6. These statements, and other similar ones made by Campbell to the police, are sufficient evidence of an intent to commit theft when he entered the victim's residence, as proof of burglary with intent to commit theft does not require proof of a successful theft, but only proof of intent to commit theft. *Jones v. State*, 519 N.E.2d 1233, 1235 (1988).

7. In its brief, the State entirely failed to respond to Campbell's contention that he was entitled to a conversion instruction, which is akin to a failure to file a brief at all on this

issue. *Newman v. State*, 719 N.E.2d 832, 838 (Ind.Ct.App.1999), *trans. denied.* Notwithstanding this omission, we are obliged to decide the law as applied to the facts in the record in order to determine whether reversal is required. *Id.* In order to win reversal on this issue, Campbell as appellant must establish the existence of prima facie error, or error that is evident at first sight, on first appearance, or on the face of it. *Id.* As outlined above, Campbell has failed to meet this standard.

1; (2) the trial court did not improperly deny a request or requests by Campbell to proceed pro se; (3) Campbell waived his right to be present during his trial on two separate occasions; (4) Lisa Saubier's testimony on behalf of the State was not so inherently unbelievable, improbable, and incredibly dubious as to require reversal of Campbell's convictions; and (5) under the evidence presented the trial court was not required to instruct the jury on and provide verdict forms for residential entry as a lesser-included offense of burglary, or conversion as a lesser-included offense of theft. Accordingly, we affirm Campbell's convictions for burglary, theft, and contempt.

Affirmed.

SHARPNACK, C. J., and ROBB, J., concur.