**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**THOMAS J. O'BRIEN**
O'Brien & Dekker
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES DAY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  79A04-1206-CR-303 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1106-FA-11

**February 7, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Here, appellant-defendant Charles Day was the only paternal grandfather that ten-year-old O.S. knew, even though he was not her biological grandfather. Day married O.S.'s grandmother before she was born, and O.S. frequently stayed overnight with her paternal grandparents.

During these overnight visits, O.S. slept in the same bed with Day because her grandmother, Debra, had to sleep in another room for health reasons. Day would inappropriately touch O.S. virtually every time she stayed with them. Eventually O.S. told her step-sister about the incidents, who in turn, told O.S.'s mother.

Day was convicted of five counts of Child Molesting,[1] three as class A felonies and two as class C felonies; Attempted Child Molesting,[2] a class A felony; and Child Solicitation,[3] a class D felony. Day was sentenced to an executed term of forty-four years in the Department of Correction (DOC).

On appeal, Day argues that the evidence is insufficient, insofar as O.S.'s testimony is incredibly dubious. Additionally, Day contends that his sentence is inappropriate in light of the nature of the offenses and his character pursuant to Indiana Appellate Rule 7(B).

Concluding that O.S.'s testimony was not incredibly dubious and that, to the contrary, independent evidence supported her testimony, we find sufficient evidence to

---

[1] Ind. Code § 35-42-4-3

[2] Id.; Ind. Code § 35-41-5-1.

[3] I.C. § 35-42-4-6.

2

sustain Day's convictions. Moreover, in light of Day's position of trust, the repeated nature of the offenses, the way in which Day paid his granddaughter so that she would engage in sexual acts with him, and his criminal background, we cannot conclude that his forty-four-year executed sentence is inappropriate, and we decline to revise it. Accordingly, the judgment of the trial court is affirmed.

FACTS

O.S., born on March 1, 2000, lived with her father in Lafayette. On weekends, O.S. stayed with her mother. O.S. would also frequently stay overnight with her paternal grandparents, Day and his wife, Debra. Whenever she stayed at Day's house, she slept in the same bed with Day, while her grandmother slept in another room because of health reasons. Although Day is not a biological relative, he was the only grandfather that O.S. knew on her father's side, having been married to Debra since before O.S. was born.

Beginning when O.S. was ten years old, Day would inappropriately touch her "almost every time [she] would go over there." Tr. p. 38. He began by kissing her longer than a goodnight kiss should last. Day progressed to touching her leg and soon, he was touching her vagina and digitally penetrating her. Day would also penetrate O.S.'s vagina with his tongue and ask her if it felt good. Day touched O.S. with his penis and asked her to touch his penis with her hand or her mouth. "White stuff would come out of [Day's penis] sometimes." Id. at 41. Day's behavior escalated to where he was attempting to have anal sex with O.S.; however, it hurt her so badly that she would move away from him when he attempted to penetrate her.

3

Day told O.S. to keep his actions their little secret or he would be in trouble. Day would pay O.S. $20 to masturbate him or to perform oral sex on him. Day offered this money in advance to entice O.S. to perform these acts. O.S. then used the money to buy pizza for herself and her friends at a local pizza shop.

After almost one year had passed, O.S. became "sick and tired of it" and told her step-sister, B.Y., about the abuse. Tr. p. 46, 111. B.Y. then told O.S.'s mother. The Lafayette Police Department was called, and O.S. and her mother were taken to the Hartford House, where O.S. was interviewed by a child forensic interviewer. Tr. p. 125, 139, 154.

On June 6, 2011, the State charged Day with five counts of child molesting, three as class A felonies and two as class C felonies; one count of class A felony attempted child molesting; and one count of class D felony child solicitation. The jury found Day guilty as charged on April 11, 2012.

On May 25, 2012, Day was sentenced to forty-four years for each of the class A felony convictions, seven years for the class C felony conviction, and two years for the class D felony conviction with all counts to be served concurrently with each other for a total executed term of forty-four years imprisonment. Day now appeals.

DISCUSSION AND DECISION

## I. Sufficiency of the Evidence – Incredible Dubiosity Rule

Day argues that the evidence was insufficient to sustain his convictions. More particularly, Day contends that the testimony of the sole witness, O.S., was incredibly dubious.

Generally, when reviewing the sufficiency of the evidence, the reviewing court neither reweighs the evidence nor determines the credibility of witnesses. Gardner v. State, 724 N.E.2d 624, 626 (Ind. Ct. App. 2000). Additionally, under the current state of the law, the uncorroborated testimony of a single witness may sustain a conviction. McCarthy v. State, 749 N.E.2d 528, 538 (Ind. 2001).

Notwithstanding these general principles, the doctrine of incredible dubiosity allows a reviewing court to reevaluate the credibility of a witness when "a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence." Fajardo v. State, 859 N.E.2d 1201, 1208 (Ind. 2007). The "[a]pplication of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." Id.

A defendant cannot appeal to this exception merely by showing some inconsistency or irregularity in a witness's testimony. Cowan v. State, 783 N.E.2d 1270, 1278 (Ind. Ct. App. 2003). Rather, a defendant must show that the witness's testimony "runs counter to human experience" such that no reasonable person could believe it. Campbell v. State, 732 N.E.2d 197, 207 (Ind. Ct. App. 2000). Moreover, the rule does

5

not apply when testimony is corroborated by additional witnesses or circumstantial evidence. Thompson v. State, 765 N.E.2d 1273, 1274 (Ind. 2002).

Here, the fact that O.S. and Day slept in one bedroom while Debra slept in a different bedroom corroborates O.S.'s testimony and provides circumstantial evidence to support her testimony. Tr. p. 36, 90, 100. Moreover, O.S.'s father corroborated her testimony that Day paid her to perform sexual acts when he testified that O.S. would often ride her bicycle to the local pizza place to buy pizza and soda, which were the exact items on which O.S. stated she spent the money. Id. at 43, 74. Finally, O.S.'s mother corroborated O.S.'s testimony that she first disclosed the molestations to B.Y. and that her mother learned of the accusations from B.Y. Id. at 45, 111. In light of the above, we cannot say that there is a complete lack of circumstantial evidence. Therefore, the incredible dubiosity exception does not apply, and this argument fails.

## II. Inappropriate Sentence

Day maintains that his executed forty-four-year sentence is inappropriate in light of the nature of the offenses and his character under Rule 7(B). When reviewing a Rule 7(B) appropriateness challenge, we defer to the trial court. Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The burden is on the defendant to persuade us that his sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). Our Supreme Court has opined that "[i]n the vast majority of cases, whether [the aggregate sentence and how it is to be served] are derived from multiple or single counts, involve maximum or minimum sentences, and are concurrent or consecutive is of far less

significance than the aggregate term of years." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008).

Here, Day was sentenced to an executed term of forty-four years imprisonment after being convicted of four class A felonies, two class C felonies, and one class D felony. Indiana Code section 35-50-2-4 provides that a person convicted of a class A felony shall be imprisoned for a term between twenty and fifty years with an advisory term of thirty years. Likewise, a person convicted of a class C felony shall be imprisoned for a term between two and eight years with an advisory term of four years. Ind. Code § 35-50-2-6. And a person who commits a class D felony shall be imprisoned for a term between six months and three years with the advisory sentencing being one and one-half years. I.C. § 35-50-2-7. Thus, it is immediately apparent that Day's executed term is far less than what he was subjected to under statute.

As for the nature of the offenses, Day was in a position of trust, insofar as he was the only paternal grandfather that O.S. knew. Day sexually abused O.S. "almost every time [she] would go over there," which was frequently. Tr. p. 38. And the molestations continued for nearly one year. Id. at 36, 112, 138. Not only were the molestations repeated and prolonged, but Day treated his ten-year-old granddaughter like a prostitute, paying her $20 each time she would perform certain sexual acts including oral sex. Id. at 43. The nature of the offenses certainly does not assist Day's inappropriateness argument.

7

As for Day's character, he does have a criminal history. More particularly, in 1989, Day was convicted of a class D felony drug offense, and in 2004, he was convicted of operating a vehicle while intoxicated (OVWI) and failing to stop at the scene of an accident. PSI p. 4-5. As part of a plea agreement in the 2004 OVWI case, another OVWI charge from two months earlier was dismissed as was a charge of possession of a controlled substance. Id.

Moreover, in 1969, Day was arrested for being Absent Without Official Leave, (AWOL), and reported being tried by a court-martial and incarcerated for six months by the United States Navy. PSI p. 5. While Day may not be the worst of the worst, his character is not so pristine to convince us that his forty-four year executed sentence is inappropriate, particularly in light of the fact that he was convicted of seven offenses, four of which were class A felonies. Consequently, Day's sentence is not inappropriate in light of the nature of the offenses and his character and we affirm the decision of the trial court.

The judgment of the trial court is affirmed.

RILEY, J., and BARNES, J., concur.