**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ELIZABETH A. BELLIN**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN C. OOSTA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  20A03-1307-CR-251 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-1011-FC-17

**February 21, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Oosta victimized his ten-year-old niece and now appeals his convictions and sentence for two counts of Child Molesting,[1] both as class C felonies. More particularly, Oosta argues that there was insufficient evidence to convict him. Additionally, Oosta contends that his aggregate twelve-year sentence is inappropriate in light of the nature of the offenses and his character and requests that we revise it pursuant to our authority under Indiana Appellate Rule 7(B). Finding sufficient evidence and concluding that Oosta's sentence is not inappropriate, we affirm.

FACTS

In the summer of 2010, Oosta lived with his wife, Wendy, and their young daughter, T.O., in a mobile home at Brookdale Manor in Elkhart County. Wendy's sister, Tammy, and her children, M.B., age ten, and D.B., age eleven, would visit and spend nights and weekends at the Oosta home. Wendy was suffering from several illnesses, including cancer, so Oosta would watch the children while they were at his home. Oosta would take the children swimming, to the park, and to the store with him.

One night in July 2010, Oosta took M.B., D.B., and T.O. to Walmart to buy items for the pool. The children were looking at games, and D.B. gave M.B. a video game and told her to ask Oosta if he would buy it for them. M.B. took the game to Oosta, who was in another aisle, and he told M.B. to put the game in the cart. While M.B. was standing by the cart, Oosta reached over, touched her vagina over her clothing and rubbed it. M.B. told Oosta to stop touching her, and he stopped when D.B. and T.O. came around the

---

[1] Ind. Code § 35-42-4-3(b).

2

corner into the aisle. Oosta and the children returned home and M.B. and D.B. stayed over that night.

The next day, Oosta took M.B., D.B., and T.O. to the swimming pool. M.B. was standing in the pool and Oosta touched her vagina with his foot. M.B. told Oosta to stop and Oosta asked why. M.B. told Oosta that she did not like it, and Oosta complied. However, Oosta repeated this act several times.

After they were finished swimming, Oosta drove M.B., who was sitting in the passenger seat, D.B., who was sitting in the backseat behind Oosta, and T.O., who was sitting behind M.B., back home. When they reached the driveway, Oosta reached over and rubbed M.B.'s vagina with his hand. M.B. told him to stop and Oosta stopped. M.B. turned and told D.B. that Oosta was touching her. Oosta said it was none of D.B.'s business, to which D.B. replied that it was his business because M.B. was his little sister. Oosta told D.B. to mind his own business and ordered him and T.O. to go into the house. When Oosta was alone in the vehicle with M.B., he told her to keep it a secret that he had touched her.

M.B. and Oosta went into the house, and M.B. attempted to use the telephone to call her mother to get her, but Oosta prevented her by unplugging the telephone. M.B. became angry and left the house to walk home. Oosta informed Wendy, who was in bed, that she might want to go after M.B., who had just left to walk home. Wendy got dressed and drove after M.B., finding her niece at the playground near the entrance to the mobile home park. M.B. was crying as she sat in a swing. Wendy asked M.B. if she wanted to

3

go home. M.B. nodded "yes" and Wendy started to drive M.B. home, but encountered M.B.'s father on the way. Tr. p. 40-41. M.B. got into her father's vehicle, and he drove her home. Once M.B. was at home, she told her parents what Oosta had done to her.

On November 8, 2010, the State charged Oosta with two counts of class C felony child molesting. Oosta's two-day jury trial commenced on May 6, 2013, and on May 7, the jury returned a guilty verdict on both counts.

The trial court held a sentencing hearing on June 6, 2013. Regarding the psychological impact on M.B., the trial court observed: "when she testified at this trial, she was clearly embittered." Tr. p. 202. The trial court noted that, at times, the courts overlook the psychological damage endured by the child who was molested, "and we reassure ourselves that since the child suffered no physical injury, the child suffered no lasting injury." Id.

Additionally, the trial court considered the circumstances of the molestations, insofar as they were committed in the presence of other children, and Oosta occupied a position of trust with regard to M.B. Oosta was M.B.'s uncle and she relied on him for her care and protection when she was with him.

Furthermore, the trial court found as aggravating circumstances Oosta's prior criminal history of six misdemeanor convictions and two parole violations. The sole mitigating circumstance was Oosta's lack of felony convictions. The trial court sentenced Oosta to six years imprisonment on each count to be served consecutively for an aggregate term of twelve years. Oosta now appeals his convictions and sentence.

4

DISCUSSION AND DECISION

## I. Sufficiency of the Evidence

### A. Standard of Review

Oosta argues that there was insufficient evidence to support his convictions for both counts of class C child molesting. Upon a challenge to the sufficiency of the evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of witnesses and respects "the jury's exclusive province to weigh conflicting evidence." McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We will consider only the probative evidence and reasonable inferences supporting the verdict. Id.

A conviction will be affirmed unless "no reasonable fact-finder" could have found the defendant guilty beyond a reasonable doubt. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). A victim's testimony, even if uncorroborated, is ordinarily sufficient to sustain a conviction for child molesting. Bowles v. State, 737 N.E.2d 1150, 1152 (Ind. 2000).

### B. Count I – Doctrine of Incredible Dubiosity

Oosta argues that the evidence was insufficient to convict him of Count I because M.B.'s testimony was so incredibly dubious or inherently improbable that no reasonable person could believe it. The doctrine of incredible dubiosity allows a reviewing court to reevaluate the credibility of a witness when "a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence." Fajardo

v. State, 859 N.E.2d 1201, 1208 (Ind. 2007). The "[a]pplication of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." Id.

A defendant cannot appeal to this exception by merely showing some inconsistency or irregularity in a witness's testimony. Cowan v. State, 783 N.E.2d 1270, 1278 (Ind. Ct. App. 2003). Rather, a defendant must show that the witness's testimony "runs counter to human experience" such that no reasonable person could believe it. Campbell v. State, 732 N.E.2d 197, 207 (Ind. Ct. App. 2000).

In Count I, Oosta was charged with class C felony child molesting. The charging information stated, in relevant part:

> [O]n or about the 1st day of June 2010, thru (sic) the 31st day of July, 2010, at the County of Elkhart, State of Indiana, one JOHN C. OOSTA, with M.B., a child under fourteen (14) years of age, did knowingly perform a touching upon said child with intent to arouse or to satisfy his own sexual desires . . . .

Appellant's App. p. 124.

In the instant case, M.B. testified that Oosta took her, D.B., and T.O. to the swimming pool. Tr. p. 72-73. While at the pool, Oosta touched M.B.'s vagina. Id. at 73-74. When M.B. told Oosta to stop, he asked her why, and M.B. told him that she did not like it. Id. at 74. Oosta stopped; however, during the drive home M.B. testified that a similar incident occurred.

On the way home from the pool, M.B. sat in the passenger's seat, T.O. sat behind M.B. and D.B. sat behind Oosta. According to M.B.'s testimony, when they reached the

driveway, Oosta reached over and rubbed M.B.'s vagina with his hand.  Tr. p. 76-77.

When she told him to stop, he did.  Id. at 79.

Contrary to Oosta's claims, M.B.'s testimony was not inherently improbable, coerced, or counter to human experience.  Furthermore, the standard for incredibly dubious testimony is inherent contradiction rather than contradiction between the testimonies of two or more witnesses.  White v. State, 846 N.E.2d 1026, 1032 (Ind. Ct. App. 2006).  Thus, Oosta's assertion that M.B.'s testimony is incredibly dubious because D.B.'s testimony did not corroborate her testimony is merely an invitation to this Court to reweigh the evidence, which we decline.  Accordingly, M.B.'s testimony was not incredibly dubious, and there was sufficient evidence to sustain Count I.

## C. Count II – Failure to Prove Element of the Offense

Oosta maintains that there was insufficient evidence to convict him of class C child molesting as alleged in Count II, which states, in relevant part:

> [O]n or about the 1st day of June, 2010, on a date separate than as alleged in Count I, at the County of Elkhart, State of Indiana, one JOHN C. OOSTA, with M.B., a child under fourteen (14) years of age, did knowingly perform a touching upon said child with intent to arouse or to satisfy his own sexual desires; . . . .

Appellant's App. p. 124.  More particularly, Oosta argues that the State failed to prove that he touched M.B.'s vagina with the intent to arouse or satisfy his sexual desires.

Because intent is a mental state, absent an admission by the defendant, "the trier of fact must resort to the reasonable inferences from both the direct and circumstantial evidence to determine whether the defendant ha[d] the requisite . . . intent to commit the

7

offense in question." Stokes v. State, 922 N.E.2d 758, 764 (Ind. Ct. App. 2010). Accordingly, intent "may be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points." Id.

Oosta directs this Court to J.H. v. State, 655 N.E.2d 624 (Ind. Ct. App. 1995), in support of his position that touching alone is insufficient to support a conviction for class C felony child molesting. In that case, J.H. was found to be a delinquent child for what would have been two counts of child molesting if committed by an adult. Id. at 625. Specifically, testimony revealed that when J.H. would babysit her nephews, she would "flick them on the penis with her finger." Id. Trial testimony also indicated that everyone was fully clothed or almost fully clothed, that J.H. never touched her nephews anywhere else, and that they never touched J.H. Id.

A panel of this Court determined that "there is no credible evidence to support a determination, beyond a reasonable doubt, that J.H. entertained the intent to arouse or satisfy her sexual desires when touching the boys." Id. at 626. While the J.H. Panel recognized that intent may be inferred from circumstantial evidence, it concluded that "there is no natural consequences associated from a twelve-year-old girl flicking little boys on the penis hard enough to hurt them. It is certainly mean, and it might constitute battery, but it alone is insufficient to amount to child molesting." Id.

We find J.H. distinguishable from the instant case. In this case, M.B testified that while she was standing by Oosta's cart, he reached around the cart and touched her

8

vagina. Tr. p. 86. M.B. told Oosta to stop, but he did not until D.B. and T.O. came around the corner into the aisle. Id. at 87.

Oosta's actions are vastly differently from the twelve-year-old girl in J.H., who "flicked" her nephews' penises when she would babysit them. 655 N.E. at 626, because the natural and probable consequences of the latter are physical pain to the boys. Here, by contrast, the factfinder could reasonably infer that the natural and probable consequence of Oosta touching M.B.'s vagina was to arouse or satisfy his sexual desires. Thus, there was sufficient evidence to sustain Oosta's conviction on Count II.

## II. Appropriateness of Sentence

Oosta contends that his aggregate twelve-year sentence is inappropriate in light of the nature of the offenses and his character and requests that this Court revise it pursuant to our authority under Indiana Appellate Rule 7(B). Upon reviewing the appropriateness of a sentence, we do not merely substitute our judgment for that of the trial court. Book v. State, 880 N.E.2d 1240, 1252 (Ind. Ct. App. 2008). Rather, after giving due consideration to the trial court's decision, our principal role "should be to attempt to leaven the outliers . . . ." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). The burden is on the defendant to persuade us that his sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Oosta points that he was convicted of two counts of class C felony child molesting for which the advisory sentence is four years on each count, but he was sentenced to consecutive terms of six years on each count. See Ind. Code § 35-50-2-6 (providing that

9

a person who is convicted of a class C felony shall be imprisoned for a term between two and eight years). Oosta further highlights that the advisory sentence is the starting point that the General Assembly has selected as an appropriate sentence for the crime committed. Richardson v. State, 906 N.E.2d 241, 247 (Ind. Ct. App. 2009).

Here, as for the nature of the offenses, Oosta committed two acts of molestation in the presence of other children. Tr. p. 72-74; 76-77. Perhaps even more concerning, he committed these acts in public places, sending a clear message to M.B. that she was not safe from Oosta's abuse, even in public. Adding further insult to injury, M.B.'s pleas for help failed when she attempted to tell her brother, D.B., about the abuse, and Oosta told him that it was none of his business and sent him into the house. Id. at 77. Similarly, Oosta unplugged the phone when M.B. attempted to call her mother for help. Id. at 80-81. Even worse, Oosta was in a position of trust; he was M.B.'s uncle, and she relied on him for care and protection, particularly in light of her Aunt Wendy's incapacity due to her battle with cancer. Id. at 36. In short, the nature of these offenses avails Oosta of nothing.

As for Oosta's character, although six of Oosta's prior convictions are misdemeanors, he has amassed two parole violations, which indicates either an inability to be rehabilitated or a disregard for our justice system. While the instant convictions are Oosta's first felony convictions, as indicated above, he certainly cannot claim to be law-abiding.

10

That said, our Supreme Court has stated "that a trial court should reserve maximum sentences for classes of offenses that constitute the worst of the worst." Hamilton v. State, 955 N.E.2d 723, 727 (Ind. 2011). Here, however, Oosta was not sentenced to the eight-year maximum sentence for a class C felony. I.C. § 35-50-2-6. Rather, he was sentenced to six years on each count or two years below the maximum, and in light of our discussion above, including the nature of the offenses and Oosta's character, we cannot say that his aggregate twelve-year sentence is inappropriate.

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.