## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 29 2018, 7:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Trent Earl Burton, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 29, 2018 <br><br> Court of Appeals Case No. 40A05-1712-CR-2961 <br><br> Appeal from the Jennings Superior Court <br><br> The Honorable Gary L. Smith, Judge <br><br> Trial Court Cause No. 40D01-1610-CM-520 |

**May, Judge.**

[1] Trent Earl Burton appeals his conviction of Class B misdemeanor criminal mischief.[1] He alleges the evidence was insufficient because the victim's testimony was incredibly dubious. We affirm.

## Facts and Procedural History

[2] Burton was involved in a long-term relationship with Ashley Lambert. However, the relationship was tumultuous and Burton had moved out of the residence. The parties had a son together and shared custody. On June 1, 2016, following an argument on the phone, Burton arrived at Lambert's residence and started kicking the storm door. After Lambert opened the inside door, Burton came into the residence and punched a hole in the wall. When told to leave, Burton left.

[3] Lambert called a friend and then called the police. Jennings County Sheriff's Deputy Shawn Minton was dispatched to Lambert's residence. He took pictures of the storm door and the wall with the hole. Deputy Minton stated no blood, hair, or fabric were found surrounding the damaged property. The hole in the wall was "three, four inches across[.]" (Tr. at 15.) The storm door had metal at the bottom and "was like kicked in." (*Id*. at 16.)

[4] On October 25, 2016, the State filed a charge of Class B misdemeanor criminal mischief against Burton. The matter was heard at a bench trial on June 22,

---

[1] Ind. Code § 35-43-1-2 (2014).

2017. Lambert, Deputy Minton, and Burton testified. The trial court found Burton guilty. At the sentencing hearing, the State and Burton agreed the court would impose a sentence of 180 days in jail and suspend it to probation, and Burton would waive his right to appeal the sentence. Noting it was unusual for parties to enter an agreement after trial, the trial court imposed that sentence.

## Discussion and Decision

[5] When reviewing sufficiency of the evidence in support of a conviction, we will consider only probative evidence in the light most favorable to the trial court's judgment. *Binkley v. State,* 654 N.E.2d 736, 737 (Ind. 2007), *reh'g denied.* The decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder. *Id.* We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference reasonably may be drawn from it to support the verdict. *Id.* at 147.

[6] Burton argues the State failed to present sufficient evidence to support his conviction of criminal mischief. To prove Burton committed Class B misdemeanor criminal mischief, the State was required to show Burton "recklessly, knowingly, or intentionally damage[d] or deface[d] property of

another person without the other person's consent." Ind. Code § 35-43-1-2(a) (2014). The State presented evidence Burton arrived at Lambert's residence, kicked the storm door and, once inside, punched the wall. The State presented testimony by Lambert and Deputy Minton, along with pictures of the damage.

[7] Burton not only disagrees with what Lambert reported but contends that, because she was the sole eye witness and her version of events does not agree with his,[2] her testimony is "inherently dubious." (Br. of Appellant at 10.) The incredible dubiosity rule allows the appellate court to impinge on the fact-finder's assessment of witness credibility when the testimony at trial was "so contradictory that the verdict reached would be inherently improbable." *Moore v. State*, 27 N.E.3d 749, 751 (Ind. 2015). "For the incredible dubiosity rule to apply, the evidence presented must be so unbelievable, incredible, or improbable that no reasonable person could ever reach a guilty verdict based upon that evidence alone." *Id*. "Incredibly dubious or inherently improbable testimony is that which runs counter to human experience, and which no reasonable person could believe." *Campbell v. State*, 732 N.E.2d 197, 207 (Ind. Ct. App. 2000). This is a high standard to meet. There must be: (1) a sole testifying witness; (2) whose testimony is inherently contradictory, equivocal, or

---

[2] Burton testified he had not been at Lambert's home on June 1, 2016, and he had not done the damage alleged. Burton stated the hole in the wall had been there "[l]ike two or three months." (Tr. at 32.) Additionally, Burton stated Lambert has previously threatened to call the police on him and that he was stopped "two nights in a row [by] a state cop that drove a SUV." (*Id*. at 34.)

the result of coercion; and (3) a complete absence of circumstantial evidence. *Moore*, 27 N.E.3d at 756.

[8] The incredible dubiosity rule does not apply here. Although Lambert was the sole eyewitness to testify, nothing about Lambert's testimony was incredibly dubious or contradictory. From the time Lambert reported the crime on June 1, 2016, through the trial a year later on June 22, 2017, she consistently stated the same facts: 1) she and Burton had argued on the phone; 2) Burton arrived at her residence and began kicking the storm door; and 3) Burton came inside and punched the wall. Even when threatened with perjury on the stand by defense counsel, Lambert did not change her version of events. The parties both admitted they had a tumultuous relationship and, unfortunately, all too often such relationships devolve into physical violence. Nothing about Lambert's testimony was "counter to human experience," *Campbell*, 732 N.E.2d at 207, and her testimony provided evidence of all elements required for Burton's conviction, *i.e.* Burton had "recklessly, knowingly, or intentionally" Ind. Code § 35-43-1-2, damaged the storm door and the wall at Lambert's residence without Lambert's consent.

[9] Burton's assertion that he was not at Lambert's residence that day is merely a request for us to reweigh the evidence and assess the credibility of the witnesses, which our Indiana Supreme Court recently reiterated misapprehends "our limited role as a reviewing court." *McCallister v. State*, 91 N.E.3d 689, 692 (Ind. 2018). We have consistently held the "uncorroborated testimony of a victim alone is sufficient to convict." *Mayo v. State*, 681 N.E.2d 689, 692 (Ind. 1997).

Although Burton testified on his own behalf with an alternate version of events, it was the province of the fact-finder to assess credibility and weigh Burton's testimony against Lambert's, and as Lambert's testimony was not incredibly dubious, we will not impinge on that power. *See Carter v. State*, 44 N.E.3d 47, 54 (Ind. Ct. App. 2015) (when testimony is neither so incredible nor improbable that a reasonable person could not believe it, "we will not impinge on the fact-finder's responsibility to judge witness credibility").

# Conclusion

[10] As Lambert's testimony was not incredibly dubious, the State presented sufficient evidence to support the conviction, and we affirm.

[11] Affirmed.

Riley, J., and Mathias, J., concur.